**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Peggy C.,[1]                                            Case No. 25-cv-1461 (DJF)

        Plaintiff,

v.                                                                    **ORDER**

Frank Bisignano,
*Commissioner of Social Security*,

        Defendant.

---

Pursuant to 42 U.S.C. § 405(g), Plaintiff Peggy C. ("Plaintiff") seeks judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying her application for disability insurance benefits ("DIB") ("Decision"). Plaintiff claims the ALJ committed reversible error in failing to restrict her residual functional capacity to jobs allowing her to alternate between sitting and standing. Plaintiff asks the Court to reverse the Decision and remand this matter to the Commissioner under sentence four of 42 U.S.C. § 405(g). (ECF No. 8 at 13.) The Commissioner asks that the Decision be affirmed in its entirety. (ECF No. 13.) This matter is before the Court on the parties' briefs. For the reasons given below, the Court affirms the Decision in part and affirms the ALJ's final determination that Plaintiff is not disabled. The Court accordingly denies Plaintiff's request, grants the Commissioner's request and dismisses this action.

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in court filings in Social Security matters.

**BACKGROUND**

**I.      Plaintiff's Claim**

Plaintiff applied for DIB on August 25, 2022 (*see* Soc. Sec. Admin. R. ("R.") 67).[2]  At that time she was 61 years old (*id.*).  She had a high-school diploma (R. 212-13) and previous work experience as a tax preparer, postal carrier, and telephone operator (R. 41-42, 213).  Plaintiff alleged she was disabled due to a low back injury (R. 212).

**II.     Regulatory Background**

An individual is considered disabled for purposes of DIB if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In addition, an individual is disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

The Commissioner has established a sequential, five-step evaluation process to determine whether an individual is disabled.  20 C.F.R. § 404.1520(a)(4).  At step one, the claimant must establish that she is not engaged in any "substantial gainful activity."  20 C.F.R. §

---

[2] The Social Security administrative record ("R.") is filed at ECF No. 6.  For convenience and ease of reference, the Court cites to the record's pagination rather than the Court's ECF and page numbers.

404.1520(a)(4)(i).   The claimant must establish at step two that she has a severe, medically determinable impairment or combination of impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  At step three, the Commissioner must find the claimant is disabled if the claimant has satisfied the first two steps and the claimant's impairment meets or is medically equal to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App'x 1 ("Listing of Impairments" or "Listing").  20 C.F.R. § 404.1520(a)(4)(iii).[3]  If the claimant's impairment does not meet or is not medically equal to one of the impairments in the Listing, the evaluation proceeds to step four.  The claimant then bears the burden of establishing her residual functional capacity ("RFC") and proving that she cannot perform any past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).  If the claimant proves she is unable to perform any past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work existing in a significant number of jobs in the national economy.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  If the claimant can perform such work, the Commissioner will find that the claimant is not disabled.  20 C.F.R. § 404.1520(a)(4)(v).

### III.    Procedural History

The Commissioner denied Plaintiff's application for DIB initially (R. 67) and on reconsideration (R. 77).  On March 6, 2024, at Plaintiff's request (R. 99), an Administrative Law Judge ("ALJ") held a hearing on Plaintiff's application (R. 34-57).  An attorney represented Plaintiff during the hearing, and Plaintiff and a Vocational Expert ("VE") testified.  (*Id.*)  The ALJ issued his Decision on April 2, 2024 finding that Plaintiff is not disabled.  (R. 14-33.)

---

[3] The Listing of Impairments is a catalog of presumptively disabling impairments categorized by the relevant "body system" affected.  *See* 20 C.F.R. Part 404, Subpart P, App. 1.

The ALJ found that Plaintiff had not engaged in substantial gainful activity since December 29, 2021, her alleged disability onset date. (R. 19, 67.) The ALJ further found that Plaintiff was severely impaired with lumbar degenerative disc disease, right knee osteoarthritis, and right hip osteoarthritis. (*Id.*) The ALJ also found Plaintiff had carpal tunnel syndrome and adjustment disorder with mixed anxiety and depression, but that these impairments were not severe. (R. 20.) The ALJ concluded that none of Plaintiff's impairments individually or collectively met or medically equaled any impairment in the Listing. (R. 23-24.)

The ALJ then determined Plaintiff's RFC. He found that:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following limitations: [She] can frequently climb ramps and stairs. She can occasionally climb ladders, ropes, and scaffolds. [She] can frequently stoop, kneel, crouch, and crawl.

(R. 24.) In reaching this determination, the ALJ reviewed the record in detail, taking into consideration the medical opinions and prior administrative medical findings in the record, Plaintiff's medical testing, imaging, examination and treatment history, Plaintiff's testimony regarding her symptoms, and her activities of daily living. (R. 24-27.)

After determining Plaintiff's RFC, the ALJ found Plaintiff had past relevant work as a telephone operator, which is "sedentary" work with a specific vocational preparation ("SVP") level of 3[4]. (R. 27-28.) Relying on the VE's testimony, the ALJ further found Plaintiff is able to perform that work, both as actually and as generally performed. (*Id.* at 28.) Based on this finding, the ALJ concluded that Plaintiff is not disabled. (*Id*. at 28-29.)

---

[4] "SVP" refers to the "specific vocational preparation" for a given occupation. Unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the Dictionary of Occupational Titles ("DOT"). Social Security Ruling (SSR) 00-4p, 2000 WL 1898704 (Dec. 4, 2000).

Plaintiff appealed the ALJ's Decision, and the Appeals Council denied Plaintiff's request for review on February 13, 2025. (R. 1.) This matter is now before the Court on Plaintiff's request for judicial review of the Decision.

**DISCUSSION**

**I.    Standard of Review**

The Court's review of the ALJ's Decision is limited to determining whether the Decision is "supported by substantial evidence on the record as a whole." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). "Substantial evidence … is more than a mere scintilla." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation modified). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This "threshold … is not high." *Id.* "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quotation omitted).

Remand is warranted, however, when the ALJ's opinion contains factual findings that "considered in light of the record as a whole, are insufficient to permit [the] Court to conclude that substantial evidence supports the Commissioner's decision." *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008); *see also Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005) (remanding because the ALJ's factual findings were insufficient for meaningful appellate review). "[T]he [ALJ] must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.*; *see also Lee R. v. Kijakazi*, No. 20-cv-1989 (BRT), 2022 WL 673259, at *4 (D. Minn. Mar. 7, 2022) (finding ALJ failed to create a "logical

bridge" between the evidence and his conclusions); *Weber v. Colvin*, No. 16-cv-332 (JNE/TNL), 2017 WL 477099, at *26 (D. Minn. Jan. 26, 2019) (same).

## II.     Analysis

Plaintiff argues the ALJ improperly failed to account for her need to alternate between sitting and standing in determining her RFC. (ECF No. 8.) Plaintiff contends the ALJ relied on conclusory statements and his own "lay interpretation of the raw medical data," and failed to appropriately take Plaintiff's self-described limitations into account. (*Id.* at 8.) Respondent argues the ALJ fully accounted for Plaintiff's impairments by limiting her to light work with various postural restrictions based on the medical findings and other evidence in the record. (ECF No. 13 at 1.) For the reasons given below, the Court agrees with Respondent and denies Plaintiff's claim.

### A.     Plaintiff's Evidence

Plaintiff's challenge amounts to a disagreement with the ALJ regarding the extent to which she has the capacity to sit or stand for significant periods of time without alternating her position. Plaintiff supports her claim primarily by pointing to her own testimony at the hearing before the ALJ. (*See* ECF No. 8 at 2-3.) She testified that she can only stand for about 15 minutes before her back starts to hurt, and that she can walk only two or three blocks before she needs to rest (R. 48). Plaintiff further testified that she can only remain sitting for about 15 minutes before her legs "start going numb" or fall asleep (R. 49). She stated that when she worked for the post office answering phones, she sometimes had to use a back support and could not sit for very long before she had to get up and walk around (R. 43). She also stated that she keeps a knee brace "close by all the time" (R. 45) and can't drive a car without a back support (R. 40). Finally, she testified that when her back really hurts she needs to lie down flat with an ice pack. (R. 48; *see also* R. 241, Feb. 9, 2023 function report submitted in connection with Plaintiff's claim.)

6

In addition to Plaintiff's self-described limitations, she points to state agency consultative examiner Lydia Anikin's findings.  (*See* ECF No. 8 at 3.)  Dr. Anikin examined Plaintiff on May 17, 2023 (R. 307-318).  Dr. Anikin's examination report included findings that Plaintiff had pain with active range of motion "at 15º extension of the lumbar spine", as well as hip pain, knee pain, and difficulty with tandem walking and balance (R. 312-16).  Dr. Anikin concluded that Plaintiff had severe degenerative disc disease, low back pain with radiculopathy, loss of balance, carpal tunnel syndrome, and osteoarthritis of the right knee and hip (R. 317).  Dr. Anikin did not make any findings about Plaintiff's functional limitations, however, and did not express an opinion as to how often Plaintiff needs to alternate between sitting and standing.  (*See* R. 311-318.)

**B.     The ALJ's Analysis**

The ALJ began his analysis by expressly acknowledging the testimony on which Plaintiff's claim rests:

> [Plaintiff] alleged disability due to conditions including low back injury … She alleged that her conditions interfere with her ability to perform activities including … standing for longer than 15 minutes at a time, walking for longer than two or three blocks at a time, sitting for longer than 15 minutes at a time …. She alleged that when her back hurts, the only thing that helps is for her to lay on her back with an ice pack. … She testified that she must lie down basically every day for about 30 minutes.

(R. 24.)  Having expressly considered this testimony, however, the ALJ determined that though Plaintiff's impairments could reasonably be expected to cause her alleged symptoms, her statements concerning "the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*)

To support this determination, the ALJ cited to multiple visits Plaintiff had with neurologist Chad Evans, in which Dr. Evans made no significant abnormal findings and Plaintiff reported she was able to treat any flareups of backpain with the medication tizanidine.  (R. 25, describing

7

normal exam findings both before and after Plaintiff's alleged disability onset date and assessing Plaintiff's low back pain in August 2022 as "stable to improved," with no changes to her treatment plan.)

The ALJ also considered Dr. Anikin's examination findings in May 2023, noting that Plaintiff had mild degenerative changes in the lumbar spine, "pain with lumbar flexion, soreness with shoulder flexion, painful right hip flexion, and right knee pain over the lateral joint line," positive Romberg (balance) testing, and difficulty with tandem walking. (R. 25; *see also* R. 27, stating the that though Dr. Anikin did not provide an opinion regarding Plaintiff's work restrictions or limitations, ALJ "considered Dr. Anikin's examination findings in assessing [Plaintiff's] residual functional capacity".)

The ALJ noted that Plaintiff visited Dr. Evans again in June 2023 following her evaluation with Dr. Anikin. (R. 26.) She reported feeling that Dr. Anikin's examination had caused a flare-up in her lower back pain. (*Id.*) Dr. Evans' examination findings at that time were otherwise "largely unremarkable", and he referred Plaintiff for physical therapy. (*Id.*) Though Plaintiff went to an initial physical therapy evaluation and was prescribed weekly treatments for ten weeks, no additional physical therapy sessions are documented in the record. (*Id.*)

The ALJ further noted that magnetic resonance imaging ("MRI") of Plaintiff's back in December 2023 confirmed she had "moderate to severe multilevel facet arthropathy" and "trace anterolisthesis with mild neural foraminal narrowing." (*Id.*) However, the MRI showed Plaintiff's condition was stable as compared to a prior MRI from June 2017. (*Id.*) Based on the medical record, the ALJ determined that conservative treatment had been reasonably effective in managing Plaintiff's symptoms and that the objective medical findings overall were not fully consistent with Plaintiff's allegations of disabling symptoms and limitations. (*Id.*)

The ALJ also took Plaintiff's activities of daily living and the prior administrative medical findings into account.  He noted that Plaintiff reported being able to perform a variety of physical tasks, including preparing simple meals, doing "light" cleaning, doing laundry, weeding raised garden beds, shopping, driving, deer hunting, canning food, baking, and looking for agates with her husband.  (*Id*.)

The ALJ further found the state agency medical consultants' opinions regarding Plaintiff's postural limitations were "persuasive."  (R. 27, accepting the consultants' postural limitations but imposing greater exertional limitations than the consultants recommended.)  Evaluating Plaintiff's condition from the period starting in December 2022, they determined that she is capable of "frequent climbing of ramps/stairs, occasional climbing of ladders/ropes/scaffolds, frequent stooping, frequent kneeling, frequent crouching and frequent crawling."  (*Id*.)  In accepting that portion of the consultants' opinions,[5] the ALJ found they were "supported by explanation and … generally consistent with the record as a whole, including [Plaintiff's] largely intact neurological and musculoskeletal examination findings, conservative treatment history, and activities of daily living."  (*Id*.)

Based on the above-described record, and noting that "no treatment provider has offered an opinion that the claimant has specific functional limitations greater than those included in [Plaintiff's RFC]," the ALJ found Plaintiff had the RFC set forth in his Decision.  (R. 27.)

### C.    Conclusion

Having reviewed the record in detail, the Court finds no error in the ALJ's RFC assessment. In determining a claimant's RFC, an ALJ must consider whether there are inconsistencies between

---

[5] The ALJ rejected the consultants' recommendation that Plaintiff be restricted to "medium" work, instead imposing greater restrictions by limiting her to "light work".  (R. 27.)

a claimant's statements and the rest of the medical evidence, only accepting those statements that can "reasonably be accepted as consistent" with the rest of the record.  20 C.F.R. § 404.1529(c)(4). Here, the only evidence Plaintiff identifies that actually supports her claim is her own testimony. The ALJ plainly took that testimony into account but found it conflicted with the objective evidence in the record.  (R. 26, "The exertional and postural restrictions in the above residual functional capacity account for the radiographic evidence of degenerative disc disease as well as the lumbar paraspinal muscle tightness, painful range of motion, and 4/5 strength noted on some clinical examinations. … However … the objective findings and the claimant's course of medical treatment are overall not fully consistent with the allegations of disabling symptoms and limitations.".)

Plaintiff contends the ALJ erred because he did not expressly mention her claim that an alternating "sitting/standing" limitation is necessary, and therefore, he failed to "perform a required analysis."  (*See* ECF No. 14 at 2.)  That contention is plainly untrue, because the ALJ *did* discuss her testimony concerning her alleged inability to sit or stand for more than 15 minutes at a time (*see* R. 24).  Plaintiff admits at least that much, but she further argues "*describing* Plaintiff's testimony is patently not the same as *meaningfully addressing* that testimony…."  (R. 14 at 3.) However, as set forth herein, the ALJ in fact explained in comprehensive detail why he found the record conflicted with her position and thus was not adopting the postural limitations she now urges upon the Court.  Though the ALJ did not use the magic words "alternate sitting and standing", sitting and standing are postural limitations, and he discussed Plaintiff's postural limitations at length.  An ALJ is not required to "mechanically list and reject every possible limitation" a claimant proposes, *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090–91 (8th Cir. 2018), nor is an ALJ required to use "magic words" or recite every possible impairment

verbatim, *see, e.g., Kasey v. Kijakazi*, No. 22-cv-2029 (WMW/DLM), 2023 WL 5754115, at *4 (D. Minn. July 13, 2023)*, report and recommendation adopted*, 2023 WL 5624007 (D. Minn. Aug. 31, 2023) ("It is not necessary for an ALJ to use magic words" when the record as a whole demonstrates the ALJ understood the claimant's impairments and imposed or declined to impose limitations related to those impairments). Therefore, the fact that the ALJ imposed RFC restrictions designed to accommodate her postural limitations without expressly referring to whether she needed to "alternate sitting standing" is not cause for remand. Plaintiff's challenge to the Decision amounts to a disagreement with the way the ALJ weighed the conflicting evidence presented in the record, but it is not the role of this Court to reweigh the evidence presented to the ALJ. *See Austin v. Kijakazi*, 52 F.4th 723, 731 (8th Cir. 2022). The Court concludes that the ALJ did not err in determining Plaintiff's RFC, and therefore, his determination that she is not disabled is supported by substantial evidence in the record as a whole.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1.    The Decision is **AFFIRMED**;

2.    Plaintiff's Request for Relief (ECF No. 8) is **DENIED**;

3.    The Commissioner's Request for Relief (ECF No. 13) is **GRANTED**; and

4.    This matter is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: April 16, 2026                              *s/ Dulce J. Foster*
                                                                   Dulce J. Foster
                                                                   United States Magistrate Judge

11